UNITED STATES BANKRUPTCY COURT
DISTRICT OF CONNECTICUT

---

| | |
|---|---|
| IN RE: ) | |
| ) | |
| LOMBARDO'S RAVIOLI KITCHEN, INC.) | CASE NO. 08-20774 (ASD) |
| ) | |
| DEBTOR ) | CHAPTER 11 |
| --- | |
| PEOPLE'S UNITED BANK ) | |
| ) | |
| MOVANT ) | |
| ) | |
| v. ) | |
| LOMBARDO'S RAVIOLI KITCHEN, INC,) | |
| COMMITTEE FOR UNSECURED ) | |
| CREDITORS, and FRANK LAGALIA ) | |
| ) | |
| RESPONDENTS ) | RE: DOC. I.D. NO. 83 |

---

APPEARANCES:

Michael S. Wrona, Esq.
    Halloran & Sage LLP
    One Goodwin Square, 225 Asylum Street, Hartford, CT 06103
    Counsel for Movant

Denise R. Polivy, Esq. and Raymond C. Bliss, Esq.
    Baker, O'Sullivan and Bliss, PC
    Putnam Park, Suite 100, 100 Great Meadow Road, Wethersfield, CT 06109
    Counsel for Respondent-Debtor

Douglas S. Skalka, Esq. and Nancy B. Kinsella, Esq.
    Neubert, Pepe, and Monteith, PC
    195 Church Street, 13th Floor, New Haven, CT 06510
    Counsel for Respondent Frank LaGalia

Ronald I. Chorches, Esq.
    Law Offices of Ronald I. Chorches LLC
    433 Silas Dean Highway, 2nd Floor, Wethersfield, CT 06109
    Counsel for Respondent Committee for Unsecured Creditors

---

**RULING DENYING MOTION FOR RELIEF FROM AUTOMATIC STAY**

### I. INTRODUCTION

The matters before the Court are (1) the <u>Motion for Relief from Stay or, in the Alternative, Motion for Adequate Protection</u> (hereafter the "Motion"), Doc. I.D. No. 83, filed by People's United Bank (hereafter, "People's"), seeking (a) relief from the automatic stay of Section 362(a) in order to pursue its pending state-court replevin action; or, in the alternative, (b) adequate protection payments (equal to principal and interest); and (2) the <u>Debtor's Opposition to Motion . . .</u> (hereafter the "Objection"), Doc. I.D. No. 95. Secured creditor Frank LaGalia, and the Committee of Unsecured Creditors, also filed objections to the Motion. Doc. I.D. Nos. 95 & 136, respectively. For the reasons set forth hereinafter, the Motion is denied.

### II. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over the instant matter by virtue of 28 U.S.C. § 1334(b); and this Court derives its authority to hear and determine this matter on reference from the District Court pursuant to 28 U.S.C. §§ 157(a), (b)(1) and the District Court's General Order of Reference dated September 21, 1984. This is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(G).

### III. BACKGROUND

The following facts are derived from evidence presented at the November 6, 2008 hearing (hereafter, the "Hearing") on the Motion and Objections; the jointly filed <u>Stipulated Facts Regarding People's United Bank's Motion . . . and Debtor's Opposition</u> (hereafter, the "Stipulation"), Doc. I.D. No. 141; and the files and records of the Court in the captioned

bankruptcy case.

On May 1, 2008 (hereafter, the "Petition Date"), Lombardo's Ravioli Kitchen, Inc. (hereafter, the "Debtor") commenced this bankruptcy case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

The Debtor, a closely-held Connecticut corporation, is in the business of producing pasta and meat products for commercial use.

All of the Debtor's assets are located at its sole processing facility in New Britain, Connecticut.

People's made three loans (hereafter, collectively, the "Loans") to the Debtor:

1) a term loan (hereafter, the "Term Loan"), dated July 20, 2006, in the original principal amount of $1,725,000;

2) a revolving line of credit loan (hereafter, the "Line of Credit Loan"), dated July 20, 2006, in the original principal amount of $250,000; and

3) a term loan (hereafter, the "Promissory Note"), dated July 31, 2007, in the original principal amount of $150,000.

The Loans are secured by a perfected first priority[1] security interest in all of the Debtor's assets. The Loans are also personally guaranteed by Mr. Scoleri, the Debtor's principal, whose guaranty was secured by junior mortgages on the residence of Mr. and Mrs. Scoleri (hereafter, the "Scoleris").

Each such Loan is further guaranteed by the following governmental entities:

1) the United States Small Business Administration (hereafter, the "SBA.") has

---

[1] Certain of the Debtor's assets are also subject to a subordinated security interest held by creditor Frank LaGalia.

3

guaranteed 75% of the Term Loan;

2) the Connecticut Development Authority (hereafter, the "CDA.") has guaranteed 38% of the Line of Credit Loan; and

3) the CDA has guaranteed 38% of the Promissory Note.

As of September 30, 2008, the amount owed by the Debtor to People's was $2,215,018.30, and the value of the Debtor's assets (hereafter, the "Collateral") was $1,249,125.89.(Stipulation ¶¶ 25, 26.)

By March, 2008, the Debtor was in default on all of the Loans. People's, in April, 2008, filed a replevin action in Connecticut Superior Court to obtain possession of the Collateral.

## IV. DISCUSSION

The filing of a bankruptcy petition "operates as a stay ... of (1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; . . . [and] (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. §362(a).

People's contends that it is entitled to relief from the automatic stay pursuant to §362(d)(1) and (2) which provide:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
>
> (1)    for cause, including the lack of adequate protection of an interest in

4

> property of such party in interest;
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization;

## A. Section 362(d)(2)(B) - Necessity of Collateral to Effective Reorganization

The parties have stipulated that the amount the Debtor owes to People's, $2,215,018.30, exceeds the value of the Collateral, $1,249,125.89, leaving the Debtor with no equity.

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." 808 F.2d, at 370-371, and nn. 12-13, and cases cited therein.

United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-376, 108 S.Ct. 626, 632 - 633 (1988).

The Debtor contends that because the Collateral consists of all the Debtor's assets, it is necessary to an effective reorganization; that without any assets, the Debtor could not reorganize since it could neither operate the business nor sell it as a going concern. People's does not dispute such contention, but argues that the Debtor is unable to *effectively* reorganize even if the stay remains in effect; that, under the Debtor's present operating budget, the Debtor is unable to make the full $27,516.06 payments of principal and interest due under the Notes; and that "[i]t is difficult to envision the Debtor funding a

5

plan of reorganization with [its present surplus of] only $1,319 per month." (Motion at 5.)

The Debtor presented the testimony of Mr. Scoleri who testified that the market for the Debtor's products was growing because its production of specialty kosher and vegetarian products uniquely positioned it within the food industry; that efforts were underway to find a purchaser for the Debtor as a going concern; and that there was at least one potential purchaser who was seriously interested. (Tr. at 4:10 - 4:14).[2] Based upon this credible testimony, *inter alia*, the Court finds that, as of the present time,[3] the Debtor has met its burden of proof and established it has a reasonable prospect of being able to effectively reorganize within a reasonable period of time. Accordingly, People's is not entitled to relief from the automatic stay under §362(d)(2).

## B. Section 362(d)(1) - Adequate Protection

People's also seeks relief from the automatic stay "for cause," contending that it lacks adequate protection because (1) the Debtor has not been making post-petition payments of the monthly principal and interest under the Notes and (2) "the Debtor's assets may be declining in value." (Motion at 5.)

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. §362(g)(1). See 2 Collier on Bankruptcy ¶ 362.10, at 362-76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

---

[2] "Tr." references refer to the electronic recording of the Hearing.

[3] The Court is, of course, cognizant that the requisite showing of the likelihood of an effective reorganization increases in proportion to the time a case is pending. See Inwood Forest, 484 U.S. at 376.

6

In re Sonnax Industries, Inc., 907 F.2d 1280, 1285 (2d Cir. 1990).

Bankruptcy Code Section 361, "Adequate Protection," provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

As noted, *supra* Part III, People's is an undersecured creditor. As such, it "is not entitled to interest on its collateral during the stay to assure adequate protection under 11 U.S.C. §362(d)(1)." Inwood Forest, 484 U.S. at 382. Thus, the Debtor's failure to make post-petition payments equal to the full amount of principal and interest determined in accordance with the terms of the Notes does not demonstrate a lack of adequate protection.

An undersecured creditor's "interest in property" entitled to adequate protection is *the value of its collateral.* Inwood Forest, 484 U.S. at 372 ("The phrase 'value of such creditor's interest' in §506(a) means 'the value of the collateral.' We think the phrase 'value of such entity's interest' in §361(1) and (2), when applied to secured creditors, means the same."). "Adequate protection payments are intended to compensate the

creditor for a decline in the value of the collateral." 3 Collier on Bankruptcy ¶361.03[2][a] (15th ed. rev. 2008). People's, having failed to provide any evidence that the Collateral is decreasing in value, has not made the requisite "initial showing of cause" and is therefore entitled neither to relief from stay under §362(d)(1) nor to adequate protection payments under §361.

Assuming, *arguendo*, that People's had established its *prima facie* showing that the Collateral was declining in value, the Court would nevertheless reach the same conclusion on grounds that People's interest in the Collateral is adequately protected by the guaranties of the SBA and CDA and the junior mortgages on the Scoleris' residence. The legislative history of §361 indicates Congress' intent that, under appropriate circumstances, a third party guaranty may provide a satisfactory form of adequate protection. H.R. Rep. No. 95-595 at 340 ("For example, another form of adequate protection might be the guarantee by a third party. . . ."). People's argues that "the legislative history shows only that a Court could look to a guarantee from a third party, but [is] not obligated to do so." (People's Supplemental Memorandum at 1.) Although the Second Circuit has not considered whether or when a third party guaranty provides a suitable form of adequate protection, the decisions of numerous other courts have long held that the suitability of a third party guaranty as a form of adequate protection depends upon the financial strength of the guaranty.

> Although some courts have held that third party guaranties cannot serve as adequate protection, these cases involved either an unsecured guaranty or a guaranty secured by collateral of negligible worth. See *In re Thomas Parker Enterprises, Inc.*, 8 B.R. 207 (Bankr.D.Conn.1981) (collateral of "doubtful value"); *In re Kenny Kar Leasing, Inc.*, 5 B.R. 304 (Bankr.C.D.Cal.1980) (unsecured guaranty). In those cases, the courts reasoned that the guaranty only gave the creditor an uncertain right to bring

> a legal action against a third party who might be able to dissipate his assets before the creditor secured a judgment. Here, however, the guaranty is secured by mortgages on two pieces of real property with substantial value. In these circumstances, courts have been willing to hold that a guaranty may serve as adequate protection. *In re Greenwood Building Supply, Inc.,* 23 B.R. 720 (Bankr.W.D.Mo.1982); *Sun Bank/Suncoast v. Earth Lite, Inc. (In re Earth Lite, Inc.),* 9 B.R. 440 (Bankr.M.D.Fla.1981); *accord Hamilton Bank v. Diaconx Corp. (In re Diaconx Corp.),* 69 B.R. 333, 338-39 (Bankr.E.D.Pa.1987) (recognizing that a guaranty can serve as adequate protection).

In re T.H.B. Corp., 85 B.R. 192, 194 (Bankr. D.Mass. 1988); See also In re Swedeland Development Group, Inc., 16 F.3d 552, 564 n. 14 (3d Cir. 1994) ("Obviously we are not suggesting that in all cases a third-party guaranty would be sufficient. The sufficiency of the guaranty would depend, *inter alia,* on the financial strength of the guarantor."); In re Harrow Leasing Corp., 35 B.R. 916, 921-922 (Bankr. D.Pa. 1983) ("We have previously held that a third-party guaranty may, under appropriate circumstances, serve as adequate protection of a creditor's interest in the debtor's property. We reaffirm that principle and focus only on the sufficiency of the guaranty in question.").

People's does not question the financial soundness of the SBA guaranty, but contends that "the language in the guarantees stating that the SBA is not to be considered a co-guarantor with the Debtor would appear to preclude such a finding" of adequate protection. (People's Supplemental Memorandum at 2.) People's argument that BancOhio v. SBA, 820 F.2d 405 (6th Cir. 1987) supports its position lacks merit.

The court in BancOhio held that the amount guaranteed by the SBA was reduced by the amount recoverable under the personal guaranty of the corporate borrower's principal. At issue in the present proceeding is whether People's interest in the Collateral is adequately protected under the combined effect of the guaranties by the Scoleris, the

9

SBA and the CDA. Regardless of how liability is allocated among the guarantors, the total amount recoverable by People's under all such guaranties is, as indicated below, at least $1,445,750.00[4], which exceeds the $1,249,125.89 value of the Collateral:

SBA Guaranties (Stipulation ¶13):

    75% of the $1,725,000 "term loan" . . . . . . . . . . . . . . . . . . . . . . . . $1,293,750.00

CDA Guaranties (Stipulation ¶14):

    38% of the $150,000 "term promissory note" . . . . . . . . . . . . . . . . . . . . $57,000.00
and   38% of the $250,000 revolving line of credit . . . . . . . . . . . . . . . . . . . . 95,000.00

Total Guaranteed Amount . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $1,445,750.00

The SBA and CDA guaranties add an extra level of protection on top of the personal guaranties secured by the mortgages on the Scoleris' residence - in effect guaranteeing the personal guaranties. The Court concludes that, under the circumstances presented herein, People's interest in the Collateral is adequately protected.

## V. CONCLUSION

In accordance with the forgoing discussion, the Court concludes that, at the present time, People's is not entitled, under either §362(d)(1) or (2), to relief from the automatic stay of §362(a) to pursue its replevin action against the Debtor's assets. The Motion (Doc. I.D. No. 83) is **DENIED**.

Dated: February 20, 2009                                    BY THE COURT

                                                               *Albert S. Dabrowski*
                                                               Chief United States Bankruptcy Judge

---

[4] Because any amount recovered under the Scoleris' personal guaranties will reduce the amount payable by the SBA, it was not necessary to estimate the recovery under the personal guaranties in order to calculate the total guaranteed amount.